**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| GIVEFORWARD, INC. | * | |
| | * | |
| v. | * | Civil No. JFM-13-1891 |
| | * | |
| KENA HODGES | * | |
| | * | |
| | * | |
| KENA HODGES | * | |
| | * | |
| v. | * | |
| | * | |
| DESIREE VARGAS WRIGLEY, et al. | * | |

********

**MEMORANDUM**

Plaintiff GiveForward, Inc. has brought this action seeking a declaratory judgment against Kena Hodges, individually and as legal guardian for her son, KDH. In response, Hodges filed counterclaims against GiveForward and a third party complaint against Desiree Vargas Wrigley and Ethan Austin, who are GiveForward's cofounders and its current chief executive officer and president respectively, as well as Kimani Johnson, who is Hodges's estranged ex-boyfriend and KDH's biological father.[1]  GiveForward then moved to dismiss Hodges's counterclaims and for judgment on the pleadings, but on November 22, 2013, this court denied the motion without prejudice to GiveForward raising its arguments again after the conclusion of discovery. (Letter Order Denying Motion to Dismiss (Nov. 22, 2013), ECF No. 30.) Wrigley and Austin now move to dismiss the third party complaint for, among other things, lack of

---

[1] The counts in the third party complaint are: (1) intentional infliction of emotional distress; (2) intentional misrepresentation; (3) civil conspiracy; (4) civil aiding and abetting against Wrigley and Austin only; (5) four claims for invasion of privacy; (6) negligence; (7) constructive fraud against Wrigley and Austin only; (8) abuse of process against Wrigley and Austin only; and (9) three claims brought under various Maryland State consumer protection statutes.

1

personal jurisdiction.  The parties have fully briefed the issues, and no oral argument is necessary.  *See* Local R. 105.6.  For the following reasons, the motion will be granted.

## BACKGROUND

According to the third party complaint, Hodges and her son, KDH, reside in Maryland.  (Third Party Compl. at ¶ 1, ECF No. 16.)  Johnson, also a Maryland resident, is KDH's biological father, but he maintains no current relationship with either Hodges or KDH.  (*Id.* at ¶ 2.)  GiveForward is a Delaware corporation with its principal place of business in Illinois.  (*Id.* at ¶ 3.)  Wrigley and Austin are GiveForward's co-founders, and they currently serve as its CEO and president respectively.  (*Id.* at ¶ 3.)  Wrigley and Austin both reside in Illinois.  (Wrigley Decl. ¶ 5, ECF No. 43-2; Austin Decl. ¶ 5, ECF No. 43-3.)

GiveForward provides an online fundraising platform for individuals to raise money from donors to cover unaffordable medical expenses.  (Wrigley Decl. ¶ 3; Austin Decl. ¶ 3.)  In early 2013, Johnson used GiveForward to launch two fundraisers for his son, KDH, claiming KDH suffered from a serious heart condition, needed surgery urgently, and lacked health insurance to cover the costs.  (Third Party Compl. at ¶ 11.)  Through these two fundraisers, Johnson raised $11,379.89.  (*Id.* at ¶ 27.)  In April of 2013, Johnson's then girlfriend alerted Hodges to the fundraiser's existence, and, knowing that KDH was actually healthy, Hodges quickly contacted GiveForward to report Johnson's fraudulent enterprise.  (*Id.* at ¶¶ 10–11, 26.)  According to Hodges, a GiveForward representative named Katie Stout told her that GiveForward conducted no due diligence with respect to Johnson's relationship to KDH, Johnson's criminal history, or KDH's purported heart condition and medical expenses.  (*Id.* at ¶ 28.)  Stout also informed Hodges that GiveForward received seven percent of the money raised by Johnson's fundraisers and could not do anything to retrieve the money from Johnson or to notify donors about

Johnson's apparent fraud.  If Hodges wanted to pursue the matter further, Stout told her that she needed to deal directly with Johnson.

According to Hodges, she then contacted Johnson, who told her that he had returned all the fraudulently collected money to the donors, and she relayed this information to Stout.  (*Id.* at ¶ 29.)  Stout told Hodges that GiveForward had not given Johnson access to any donor contact information, only a list of donor names, so Johnson would have to personally know or locate donor contact information to return the donations.  Stout also told Hodges that GiveForward would not return the seven percent fee it collected when the donations originally were processed.  Thereafter, Hodges's attorney contacted Wrigley and Austin about Johnson's fraudulent scheme.  (*Id.* at ¶ 31.)  In response, Wrigley and Austin denied any prior knowledge of Johnson's apparent fraud specifically or of any other fraudulent fundraisers hosted by GiveForward generally.

Prior to the commencement of this litigation, in June of 2013, counsel for the parties communicated regarding a potential settlement agreement.  (*Id.* at ¶ 38.)  In response to a request by GiveForward's Illinois-based counsel, counsel for Hodges sent a settlement demand letter and case valuation to GiveForward.  On the following day, June 27, 2013, GiveForward's Maryland-based counsel filed this declaratory judgment action against Hodges even though GiveForward's Illinois-based counsel never mentioned his client's immediate intention to initiate formal legal proceedings during the ongoing settlement discussions.  On October 2, 2013, Hodges filed the third party complaint against Wrigley, Austin, and Johnson.

## STANDARD

Under Rule 12(b)(2), the party asserting personal jurisdiction bears the burden of proving its existence by a preponderance of the evidence.  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *see also* 2-12 James Wm. Moore, *Moore's Federal Practice* § 12.31 (3d ed.

1997). If a court chooses to decide the issue of personal jurisdiction before trial—as the court will do in this case—it may either hold a separate evidentiary hearing, or it may decide the issue on the basis of allegations in the complaint, affidavits, and other discovery materials. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). If the court chooses the latter approach and does not hold a hearing, the party asserting personal jurisdiction "need prove only a prima facie case of personal jurisdiction." *Mylan*, 2 F.3d at 60. Additionally, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

The party asserting jurisdiction must satisfy two conditions for personal jurisdiction over a nonresident individual to exist: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396. As to the first condition, this court is bound by the Maryland Court of Appeals' interpretation of the Maryland long-arm statute. *Id.* Although the Maryland long-arm statute "is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution," *id.*, the Maryland Court of Appeals has clearly stated that courts must still address the long-arm statute as part of the personal jurisdiction analysis. *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006); *see also Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811 (D. Md. 2010).

And with respect to the constitutional analysis, the standard for personal jurisdiction varies depending on whether the person's contacts with the forum state are connected to the lawsuit. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). Specific jurisdiction exists where the person's contacts also form the basis for the suit. *Id.* A

district court "may exercise specific jurisdiction if (1) the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, that is, consistent with 'traditional notions of fair play and substantial justice.'" *See Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 366 (D. Md. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)).  If, on the other hand, the person's contacts with the forum state are unrelated to the lawsuit, then general jurisdiction must exist.  General jurisdiction imposes a higher bar than specific jurisdiction because it requires the individual to maintain "continuous and systematic" contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

## ANALYSIS

No party in this case has suggested that Wrigley and Austin had "continuous and systematic" contacts with Maryland, so the court's analysis concentrates on whether Hodges has demonstrated that specific jurisdiction exists in this case.  Wrigley and Austin argue that their complete lack of personal connections with Maryland makes the assertion of jurisdiction over them improper.  Wrigley and Austin submitted declarations stating that they (1) are not Maryland residents; (2) have never filed income taxes in Maryland; (3) have never maintained any office or place of business in Maryland; (4) have never personally solicited or transacted business in Maryland; (5) have never employed anyone in Maryland; (6) have never owned or leased real estate in Maryland;  (7) have never maintained a mailing address or anything of value in Maryland; (8) have no immediate family members who are residents of Maryland; (9) and

5

have never worked for a corporation organized under the laws of Maryland or with its principal place of business in Maryland. (Wrigley Decl. ¶¶ 7–17; Austin Decl. ¶¶ 7–17.)

Hodges alleges several facts to support the assertion of jurisdiction, namely that (1) Wrigley and Austin transacted business in Maryland when they committed acts that gave rise to the abuse of process claim against them—filing a declaratory judgment action against Hodges without warning and in the midst of settlement negotiations; (2) Wrigley and Austin transacted business in Maryland by engaging legal counsel in Maryland to file the declaratory judgment action; and (3) Wrigley and Austin continue to engage in substantial business services in Maryland through GiveForward's fundraising platform.

As discussed more fully below, Hodges's allegations provide insufficient support for the assertion of personal jurisdiction over Wrigley and Austin.

**I.      Maryland's Long-Arm Statute**

As the party asserting personal jurisdiction, Hodges first "must identify a specific Maryland statutory provision authorizing jurisdiction." *See Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 512 (D. Md. 2004) (internal quotation marks and citations omitted).   Maryland's long-arm statute provides in relevant part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>    (1) Transacts any business or performs any character of work or service in the State;
>
>    (3) Causes tortious injury in the State by an act or omission in the State; [or]
>
>    (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

6

MD. CODE ANN., CTS. & JUD. PROC. § 6-103 (West).  Section 6-103(a) also states that "[i]f jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."  Hodges argues that §§ 6-103(b)(1), (b)(3), and (b)(4) all authorize jurisdiction over Wrigley and Austin, but none of her arguments are persuasive.

Under § 6-103(b)(1), an individual who "[t]ransacts any business or performs any character of work or service" in Maryland is subject to jurisdiction here.  "Transacting business pursuant to subsection (b)(1) requires actions that culminate in purposeful activity within the state." *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 689 (D. Md. 2007) (internal alterations, quotation marks, and citations omitted).  It does not require, however, the individual's physical presence in Maryland.  *See id.* (citations omitted).

According to Hodges, Wrigley and Austin transacted business when they surreptitiously filed a declaratory judgment action against her in the middle of settlement negotiations, giving rise to her abuse of process claim, and when they engaged counsel in Maryland to file the declaratory judgment action against Hodges.  She further argues that Wrigley and Austin continue to transact business in Maryland by providing substantial business services to Maryland residents through the GiveForward platform.   None of these bases, however, are examples of Wrigley and Austin personally transacting business in Maryland.  "An individual and a corporation of which that individual is the principal are separate legal entities."  *See Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990).  Here, GiveForward, a separate legal entity, filed the declaratory judgment action against Hodges and retained counsel in Maryland, and GiveForward's platform is used by Maryland residents.  Hodges has not argued that there are grounds to "pierce the corporate veil," and the third party complaint is bereft of

7

allegations "that the corporation is merely a façade for [Wrigley and Austin's] individual activities." *See Quinn v. Bowmar Pub. Co.*, 445 F. Supp. 780, 786 (D. Md. 1978). "Absent such grounds . . . there is no basis whatsoever for holding that merely because a corporation transacts business in the state, contracts to supply goods or services in the state or has other substantial contacts with the state, an individual who is its principal should be deemed to have engaged in those activities personally." *Birrane*, 738 F. Supp. at 169. Hodges's effort to attribute GiveForward's actions to Wrigley and Austin are conclusory and are therefore insufficient to subject them to jurisdiction in Maryland.

Nor does § 6-103(b)(3) confer jurisdiction over Wrigley and Austin. Section 6-103(b)(3) "requires that both the tortious injury and the tortious act must have occurred in Maryland." *See Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006). Although Hodges is correct that certain acts—such as the filing of the declaratory judgment action—occurred in Maryland, she again fails to recognize the difference between GiveForward's actions and contacts and Wrigley and Austin's. Indeed, Hodges has not alleged Wrigley or Austin personally committed any acts while in Maryland that caused tortious injury here. Accordingly, Hodges has failed to show that § 6-103(b)(3) applies here.

Finally, § 6-103(b)(4) does not provide a basis for subjecting Wrigley and Austin to jurisdiction in Maryland. For subsection (b)(4) to apply, Hodges must show Wrigley and Austin regularly do business in Maryland, engage in a "persistent course of conduct" in Maryland, or derive substantial revenue from activity in Maryland. *See Dring*, 423 F. Supp. 2d at 546–47. Again, Hodges wrongly attributes GiveForward's Maryland contacts to Wrigley and Austin. Hodges asserts that jurisdictional discovery would reveal additional contacts, but she does not specify in her allegations or even hint at what those additional contacts might be.

8

In sum, Hodges has fallen short of her burden to prove a prima facie case of personal jurisdiction because she cannot identify a specific provision in the Maryland long-arm statute that applies.

## II.     Constitutional Due Process

Even if Hodges could prove that one of the provisions of the Maryland long-arm statute applies in this case, she would still need to satisfy the constitutional due process requirement before Wrigley and Austin are subjected to personal jurisdiction in Maryland.  This she can't do. "Personal jurisdiction must be based on an individual's personal contacts with or purposeful availment of the forum state." *See Harte-Hanks*, 299 F. Supp. 2d at 513.  Accordingly, just as Hodges could not satisfy the requirements of any of the provisions of the Maryland long-arm statute, Hodges similarly cannot establish that Wrigley and Austin "purposely availed [themselves] of the privilege of conducting activities" in Maryland.  *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (discussing nonexclusive factors courts have considered when deciding whether a defendant has engaged in purposeful availment).  As set forth in their declarations, Wrigley and Austin not only lack minimum contacts with Maryland, they have no personal contacts with Maryland—they are not Maryland residents, they do not own property or maintain offices in Maryland, and they have never personally solicited business in Maryland, among other things.  (Wrigley Decl. ¶¶ 7-17; Austin Decl. ¶¶ 7-17.)  The only contacts alleged by Hodges belong to GiveForward, a separate legal entity.

"Nor can it be said that [Wrigley and Austin] would 'reasonably anticipate being haled into court' in the state in [their] individual capacit[ies] by virtue of the corporation's activities there." *Birrane*, 738 F. Supp. at 169–70 (quoting *World-Wide Volkswagen Corp. v. Woodson*,

9

444 U.S. 286, 297 (1980)).  Neither Wrigley nor Austin "deliberately has engaged in significant activities within [Maryland] or has created continuing obligations between [herself or] himself and residents of the forum."  *See Burger King*, 471 U.S. at 475–76.  It therefore would be unjust to exercise jurisdiction over them in this case.

Because Hodges also fails to satisfy the constitutional due process requirement of the prima facie case, the third party complaint against Wrigley and Austin must be dismissed for lack of personal jurisdiction.

### CONCLUSION

For the foregoing reasons, the motion to dismiss the third party complaint against Wrigley and Austin is granted.  A separate order follows.[2]


May 22, 2014                                                  /s/
Date                                                           J. Frederick Motz
                                                               United States District Judge

---

[2] Because the court grants the motion to dismiss for lack of personal jurisdiction, it is not necessary to reach the other grounds argued by Wrigley and Austin for dismissing the third party complaint, namely that the third party complaint does not comply with Federal Rule of Civil Procedure 14 and that Hodges lacks sanding to assert her claims.